```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES COLLINS,                         :
                                       :
          PLAINTIFF,                   :    CIVIL ACTION
                                       :
     v.                                :    No. 05-cv-1853
                                       :
PAREXEL INTERNATIONAL and BARNETT      :
INTERNATIONAL,                         :
                                       :
          DEFENDANTS                   :
```

**MEMORANDUM AND ORDER**

**Joyner, J.**                                          **June 12, 2008**

Presently before this Court is Defendant Parexel International's ("Parexel") and Defendant Barnett International's ("Barnett") (together "the Defendants") Motion for Summary Judgment ("D. Mot.") (Doc. No. 34), Plaintiff's Response ("P. Resp.") (Doc. No. 53) and Defendants' Reply ("D. Rep.") (Doc. No. 58 ). For the reasons set forth below, the Court DENIES Defendants' motion.

**Background**

In January of 2005, Plaintiff James Collins brought an action against Parexel for retaliatory discharge under the Sarbanes-Oxley Act of 2002. He later amended his complaint to include a claim for defamation. Prior to his termination,

Plaintiff was the Vice President of Operations for Barnett[1]. Plaintiff claims that around August 2003, he learned from his colleague Jeff Klimaski, then Director of Business Planning Operations for Barnett, that external auditors for the company had discovered certain accounting irregularities within the company's database.  Plaintiff engaged in his own investigation of the accounting issues and, in Fall 2003, he contacted several of his supervisors in hopes that the irregularities would be investigated and resolved.  Unsatisfied with Parexel's investigation of these issues, Plaintiff retained an attorney in December of 2003 to negotiate an "amicable separation" from his employer.  Operating under the belief that his termination was imminent, Collins began preparations to launch a consulting company in February of 2004.  In early March of 2004 Parexel's general counsel contacted Plaintiff's counsel and informed him that Plaintiff's concerns were being investigated and that Parexel wanted Plaintiff to continue his employment.  Plaintiff contends that, despite the statements of Parexel's counsel, he was gradually stripped of his job responsibilities.  He was terminated on April 28, 2004, shortly after Defendants learned that he had incorporated a new business in violation of the terms of his employment agreement.

---

[1]Plaintiff was hired by Barnett, which, during the course of Plaintiff's employment became a division of a subsidiary of Defendant Parexel International Corporation.

Plaintiff also claims that following his termination, Defendants' repeatedly defamed him.  He claims that at least three Parexel employees published statements stating that he had been terminated for mishandling and/or mismanaging money.  As a result of these comments, Plaintiff avers that he has suffered "personal humiliation and harm to his reputation." (Pl. Resp. at 25.)  Defendants have moved for summary judgment on both of Plaintiff's claims.

### Standard for Summary Judgment

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense.  Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976).  Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence

is insufficient to carry that burden." Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. See Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). However, there must be more than a "mere scintilla" of evidence in support of the non-moving party's position to survive the summary judgment stage. Anderson, 477 U.S. at 252.

**Discussion**

A. The Sarbanes-Oxley Act

Plaintiff claims that he was fired from the company in violation of 18 U.S.C. § 1514(a)(1). Defendants argue that they are entitled to summary judgment on this claim because "[p]laintiff cannot establish the threshold requirement that his alleged protected activity was a contributing factor in the decision to terminate his employment." (Def. Mot. at 7.)

In order to establish a prima facie case under the Sarbanes-Oxley Act of 2002, Plaintiff must establish the following by a preponderance of the evidence: (1) he engaged in protected activity or conduct; (2) his employer knew or suspected, actually or constructively, he engaged in the protected activity; (3) he suffered an unfavorable personnel action; (4) the circumstances were sufficient to raise the inference that the protected

4

activity was a contributing factor in the unfavorable action. 29 C.F.R. § 1980.104 (2004). Once a prima facie case has been established, the burden then shifts to the defendant to demonstrate, by clear and convincing evidence, that "a legitimate purpose or motive for the adverse personnel action" exists. Welch v. Cardinal Bankshares Corp., Case No. 2003-SOX-15, 2004 DOLSOX LEXIS 41, at *147 (Dept. Of Labor January 28, 2004).

There is no argument that Plaintiff engaged in protected activity and that he suffered adverse employment action. The parties disagree, however, that there is a genuine issue of material fact whether Plaintiff's protected activity was a contributing factor in his termination. A contributing factor is defined as "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." Grove v. EMC Corp., Case No. 2006-SOX-00099, 2007 DOLSOX LEXIS 49, at *73 (Dept. Of Labor July 2, 2007).

Defendants argue that Plaintiff has failed to show that his alleged protected activity was either a primary motivating factor or a contributing factor in Parexel's decision to terminate him. They argue that the evidence in the record clearly demonstrates that Plaintiff was terminated by the company for "legitimate business reasons, violating his Key Employment Agreement with Parexel." (Def. Rep. at 1-2.) The agreement, which Plaintiff signed, provided that employees were prohibited from "engag[ing]

in any employment, consulting, or other business other than for the Company." (Def. Mot., Exh. B.)

Defendants point to the following as proof that Plaintiff failed to comply with the agreement: (1) Plaintiff incorporated his own independent business while still employed at Parexel and retained office space; and (2) he agreed to speak on behalf of his independent company at a conference sponsored by a Parexel competitor while still employed by Parexel.

Plaintiff argues that he did not begin to operate his company until after he was terminated and that he did not engage in any substantive activity with the company prior to his termination.  He has set forth facts demonstrating a pattern of retaliation following his filing of a Whistleblower Letter in January 2004.[2]

Upon review of the record, we agree with Plaintiff that there is a genuine issue of material fact whether his protected activity was a contributing factor in Parexel's decision to terminate him.  He has provided sufficient evidence of acts on the part of Parexel following his Whistleblower Letter that

---

[2]Defendants argue that the passage of time between Plaintiff's protected activity and his termination (seven months) defeats any causal connection between the two events, and no reasonable jury could find otherwise.  We disagree that the intervening seven month period is dispositive of that fact.  Courts have denied summary judgment in situations where a similar period of time has lapsed between the two events where there was other evidence of causation, namely a pattern of retaliation that began at the point it became evident that an employee had engaged in protected activity. See. e.g. Mahony v. Keyspan Corp., 2007 U.S. Dist. Lexis 22042 at *17.

suggests a pattern of retaliation, including repeated isolation and exclusion from his employment responsibilities.  <u>See</u>. Pl. Resp., Exh. 3 at 181-4.

Nevertheless, Parexel argues that even if Plaintiff can establish a prima facie case of retaliation, it had a legitimate business reason for terminating his employment – that he violated his employment agreement by incorporating an independent business and engaging in speaking engagements while still employed by Parexel.  Plaintiff argues, however, that this business reason offered by Parexel is merely a pretext for his termination.  Based upon the evidence, we agree that there is ample evidence in the record to support this claim and thus, Defendants are not entitled to summary judgment.  Plaintiff has set forth facts in his responsive motion demonstrating that Defendants were aware that Plaintiff had not engaged in any competitive business activity prior to April 2004 and that he had assured Defendants that any speaking engagements in which he participated would be on behalf of Parexel.  (Pl. Resp. at 23).

At the very least, it is disputed whether Plaintiff engaged in activity in furtherance of his own business interests while still employed by Defendants.  Therefore, we agree with Plaintiff that there is sufficient evidence to allow a jury to fully evaluate the merits of this claim.

<u>B. Defamation</u>

Plaintiff alleges that in addition to his alleged unlawful termination by Defendants, his reputation has also been damaged as a result of defamatory statements about him made by several Parexel employees.  (Pl. Resp. at 33.)

Under Pennsylvania law, in order to prove a claim for defamation, Plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; (5) an understanding by the reader or listener of an intent by the defendant that the statement refers to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged position. Clemente v. Espinosa, 749 F. Supp. 672, 677 (E.D. Pa. 1990) (citing 42 Pa. Cons. Stat. § 8343(a) (1988)).  A statement is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. at 676 (quoting Cosgrove Studio and Camera Shop, Inc. v Pane, 182 A.2d 751, 753 (Pa. Sup. Ct. 1962)).  Under Pennsylvania law, it is for the court to determine whether the statement at issue is capable of defamatory meaning. Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570 (E.D. Pa. 1999), aff'd, 229 F.3d 1139 (2000).

Defendants contend that Plaintiff has failed to provide

sufficient information to support his claims for defamation as set forth in Count II of his Amended Complaint.  We disagree.

In his responsive motion, Plaintiff has described several incidents where representatives for the Defendants published defamatory statements about him which have damaged his reputation within the business community.  (Pl. Resp. at 24-26).

First, Plaintiff alleges that Lorie Ferraro, Director of Human Resources at Parexel, admitted at her deposition that defamatory statements were made by Steve Pugliese about Collins concerning his mishandling of funds.  Citing Ferraro's December 2005 deposition, Plaintiff argues that "Pugliese told third parties that Parexel fired Collins because he mismanaged money" (Pl. Resp. at 33.)  Upon review of the relevant portion of Ms. Ferraro's deposition, we find no support for such a claim.

Clearly, Ms. Ferraro does not admit, as Plaintiff suggests, that Mr. Pugliese published defamatory statements about Plaintiff.  At no point did Ms. Ferraro admit at her deposition that she heard any other employee make defamatory statements about Plaintiff.  As Defendant accurately points out in its motion, Ms. Ferraro only stated that if Mr. Pugliese had told the office that Plaintiff mismanaged money, she would not have been surprised to hear that.  We cannot construe Ms. Ferarro's response as an admission that she heard Mr. Pugliese disparage Plaintiff and thus refuse to consider this evidence in our

analysis.

Plaintiff has alleged, however, that other Parexel employees made damaging comments about him alleging that he had mismanaged and/or misappropriated funds. Apparently, Plaintiff was informed about these comments via other co-workers. While Defendants argue that these statements are inadmissable hearsay because "Plaintiff has no firsthand knowledge concerning the content of the publication of the alleged defamatory statements" (Def. Mot. at 12), we agree with Plaintiff that the statements are non-hearsay as they are admissions of a party-opponent. See FED. R. EVID. 801(d)(2)(D) (a statement is not hearsay if [it] is offered against a party and is [made] by the party's agent or servant concerning a matter within the scope of the agency or employment ... during the existence of the relationship.)

Defendants nevertheless argue that Plaintiff fails to provide evidence that these alleged defamatory statements harmed his reputation in the business community and they are therefore entitled to summary judgment on this claim. As stated above, one of the requirements of a defamation claim is to show "special harm" resulting to the plaintiff from its publication. Espinosa, 749 F. Supp. at 677. The term "special harm" is defined as "actual damages which are economic or pecuniary losses." Sprague v. Am. Bar Ass'n, 276 F. Supp. 2d 365, 368-69 (E.D. Pa. 2003) (quoting Restatement (Second) of Torts, § 575, cmt. b (1977)).

10

However, Pennsylvania recognizes an exception to the "special harm" requirement for slander actions. A plaintiff may succeed in a claim for defamation absent proof of special harm where the spoken words constitute slander per se. Espinosa, 749 F. Supp. at 677. There are four categories of words that constitute slander per se: words that impute (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct. Id. (citing Restatement (Second) of Torts § 570 (1977)).

Without using the slander per se standard, Plaintiff would not have a sufficient defamation claim because he cannot establish any "special" harm. He has not identified any economic or pecuniary losses suffered as a direct result of the alleged communications. However, Plaintiff has described "multiple damages caused by the defamation, namely hindering [his] ability to get a job...because of his reputation." (Pl. Mot. at 8.)

In Pennsylvania, a defendant who publishes a statement which can be considered slander per se is liable for the proven, *actual* harm that the publication causes. Walker v. Grand Cent. Sanitation, 634 A.2d 237, 244 (Pa. Super. Ct. 1993). To show actual damages in a defamation claim, the plaintiff must show competent proof. Sprague, 276 F. Supp. 2d at 368. Actual damages are divided into two types: general and special. Id. "General" damages typically flow from defamation, such as

11

"impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." Id.  The Restatement (Second) of Torts requires a victim of slander per se to make some showing of general damage, although he need not prove "special damage."  Walker, 634 A.2d at 241.  Proof of general damages is required, since it accommodates the Court's interest in maintaining some type of control over the amount that a jury should be entitled to compensate an injured person.  Id. at 251.  In determining if a plaintiff has demonstrated any loss to reputation, it must be measured by the perception of others, rather than that of the plaintiff himself because "reputation is the estimation in which one's character is held by his neighbors or associates."  Sprague, 276 F. Supp. 2d at 370.

       Previous cases have made assessments of the evidence of such actual harm.  For example, in Marcone v. Penthouse International Magazine, the plaintiff testified that he was "frustrated, distraught, upset, and distressed," and that he feared "retribution against his family."  Marcone v. Penthouse International Magazine, 754 F.2d 1072, 1080 (3rd Cir. 1985).  Likewise, in Sprague, the plaintiff asserted that the defamatory statements cause him "anger, humiliation, embarrassment, and fear."  Sprague, 276 F. Supp. 2d at 371.  He also alleged that his fear was "constant and continuous."  Id. at 372.  In these cases, the court found that there was sufficient evidence of

actual harm for a jury to decide the issue.

We find that under the slander per se standard, Plaintiff has demonstrated damages sufficient to support his defamation claim and thus survive summary judgment. As we have previously found, where a "reasonable jury could find that Plaintiff has suffered from some continuous fear, embarrassment, or humiliation to his reputation within the community", general damages may be satisfied at the summary judgment phase. See <u>Pennoyer v. Marriott Hotel Servs., Inc.</u>, 324 F. Supp. 2d 614, 619 (E.D. Pa. 2004).

At his deposition, when asked what damages he has suffered, Plaintiff testified that he has had to explain to "colleagues, future clients and potential coworkers" alike that he was not terminated for misappropriating company funds. He clearly expressed concern about his perceived standing within such a small business community and the correlation between the nature of the comments (his mismanagement/misappropriation of money) and his current and future credibility as an accounting professional. At this stage, we find that there is a sufficient evidentiary basis on which a reasonable jury could find for Plaintiff and Defendants are not entitled to summary judgment on this claim.

**Conclusion**

For all of the reasons set forth above, Defendants Motion for Summary Judgment is **DENIED** pursuant to the attached order.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
JAMES COLLINS,                          :
                                        :
             PLAINTIFF,                 :    CIVIL ACTION
                                        :
    v.                                  :    No. 05-cv-1853
                                        :
PAREXEL INTERNATIONAL and BARNETT       :
INTERNATIONAL,                          :
                                        :
             DEFENDANTS                 :
```

### ORDER

AND NOW, this 12th day of June, 2008, upon consideration of Defendants' Motion for Summary Judgment, and the responses thereto, for the reasons stated in the accompanying memorandum, it is hereby ORDERED that the Motion is DENIED.

                                        BY THE COURT:


                                        s/J. Curtis Joyner
                                        J. CURTIS JOYNER, J.